STATE of Missouri, Respondent,

v.

Patrick D. DONOHOE, Appellant.

No. WD 39902.

Missouri Court of Appeals,
Western District.

Feb. 28, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 2, 1989.

Application to Transfer Denied
June 13, 1989.

Tim L. Warren, St. Joseph, for appellant.

William L. Webster, Atty. Gen., Carrie D. Francke, Sp. Asst. Atty. Gen., Jefferson City, for respondent.

Before SHANGLER, P.J., and CLARK and NUGENT, JJ.

SHANGLER, Presiding Judge.

The defendant Donohoe was convicted by a jury of the knowing possession of cocaine in violation of § 195.020, RSMo 1986. He was sentenced to a term of one year in the county jail. The evidence used to convict the defendant was the result of a nonconsensual search of the interior of the vehicle Donohoe was driving at the time of his arrest. The defendant moved to suppress the evidence under § 542.296, RSMo 1986 as the result of an unlawful search and seizure. The trial court denied the motion and received the evidence. The defendant appeals the conviction as based upon illegal proof.

The defendant was arrested by the highway patrol for speeding on interstate I–29. The vehicle was driven by defendant Donohoe and was also occupied by two other males. One sat beside Donohoe and the other in the middle of the back seat. The officer, trooper Deshler, testified that the car came to a normal stop to his signal. The trooper brought Donohoe back to the patrol car and issued him a citation for speeding. The trooper testified that the two occupants who remained in the Donohoe car made no unusual movements or at any time made any statements which caused him to be concerned for his own safety. Nor was there anything unusual in the initial responses by Donohoe. As he wrote the summons, however, the defendant became "extremely nervous"—more than usual for such an encounter.

> The conversations were rapid fire about different—completely different subjects ... We would finish one subject and before I would even have a chance to answer, he would go to a different subject ... A lot of nervous talking was the main thing that drew my attention.

The defendant was not, however, threatening in any way to the trooper nor was his speech incoherent. His speech and mannerisms, nevertheless, appeared to the trooper as "one of the most nervous reactions I've received when writing a ticket" during his seven years of service. The officer asked Donohoe "Is there anything in the car I should know about?"—and asked to be allowed to "look in the car." Donohoe responded, "No, I don't think you have any legal right. I would rather you wouldn't." The trooper ran a check for outstanding "wants or warrants" against the defendant and whether he had a criminal record. There were none.

It was the original intention of the trooper simply to allow Donohoe to reenter his car and follow the trooper car to the office of the county sheriff to make bond—as is required of a nonresident driver. That was because, as the trooper explained, he had "no reason to treat him like a criminal." When the defendant refused the trooper request to search his car, however, the officer told Donohoe that he would not

allow him to reenter until he had searched the car interior for weapons. The officer explained:

I advised him that before I allowed him into the car at that point in time I conducted a weapon search for my own safety.

. . . .

His nervousness triggered something in me—triggered my suspicion, and as a courtesy, under normal circumstances, I let a person normally follow me to the jail for bond. He has been quite cooperative other than his nervousness, and I was going to let him follow in the car. He did have a valid license; although, I felt there was something wrong for the nervousness; and for my own protection, I wanted to search the driver area for a weapon.

The trooper and the defendant proceeded from the patrol car—where the interrogation had been conducted—to the Donohoe car.[1] The trooper opened the driver's door and Donohoe remained to his right and rear, but within peripheral sight. The other two occupants of the car were still where they had been—one on the passenger side of the front seat, and the other in the middle of the back seat. The trooper began his search. [He did not before then or at any other time frisk, pat down or otherwise undertake to determine if Donohoe or the occupants were armed.] The trooper swept his hand under the driver's seat for any weapon, but found none. His attention was then attracted by one end of a small zippered nylon bag which protruded slightly from under a stack of magazines in the middle of the front seat. The trooper described the object as a " 'gun rug', an eight-inch by six-inch bag sometimes used to hold a revolver." He felt the bag and made out a lump and "at the time I thought possibly a barrel off the end of the lump ... I thought it was possibly a cylinder of a gun, a small revolver." He did

not, however, feel anything that resembled a trigger or trigger guard. He asked the occupants what was in the bag, and they replied, "things." The defendant, still standing nearby, was never questioned concerning the contents of the bag.

The trooper unzipped the bag and found a package of green leafy substance, a metal smoking pipe, a small piece of folded paper, and other items. The trooper unfolded the paper and found a white granular substance, which laboratory analysis determined to be cocaine. The trooper placed Donohoe in arrest and the occupants also, when no one claimed responsibility for the bag. Other troopers then arrived to assist in the transport of the arrestees.

The court denied the motion to suppress the evidence taken in the nonconsensual search of the automobile interior, and based upon that evidence Donohoe was convicted of the knowing possession of cocaine upon the full trial before the jury.[2] The court explained its judgment:

THE COURT: This is a case where I think that every step, everything the trooper did he did wrong. I really question that a conviction in this case will be affirmed on appeal. I'm going to overrule the motion to suppress, but I have serious doubt that if the State obtains a conviction in this case they could hold the conviction on appeal.

Frankly, in my mind, and this is an improper reason for doing it, but in my mind the defendant is guilty, which is not to be determined here, but the cost of the appeal should lie with him. So I am going to overrule the motion to suppress, but I will state—I am certain Mr. Holliday is well aware of this, too—if he gets a conviction in this case, I'll be reversed on appeal. But the motion to suppress is overruled.

I might add, I wouldn't rule this way except there is a slight chance I think that the court of appeals might say the

---

1. There is no description of the Donohoe vehicle, other than that the car was "an older model white Chevy" of Nebraska registration.

2. We note that the judge who heard and ruled the motion to suppress is not the same judge who presided over the trial of the offense. The motion to suppress and the order entered on the motion—the essential subject of our review—were adjudicated by Judge Fred E. Schoenlaub, since retired.

trooper did one or two things right; but from the evidence I heard this morning, it is the first case I ever heard where I think the trooper did everything wrong. Everything he said, everything he testified to indicated that he should have done something that he didn't do or he should have done something differently than he did do, but the motion to suppress is overruled.

The defendant does not argue that the stop of the automobile and consequent citation for speeding were irregular, but that there lacked probable cause for the warrantless search of the automobile interior, and so the conviction based upon the evidence that search yielded was illegal.

The fundamental right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures is preserved by the requirement of the Fourth Amendment that searches be conducted pursuant to a warrant issued upon probable cause by an independent judicial officer. *California v. Carney*, 471 U.S. 386, 390, 105 S.Ct. 2066, 2068, 85 L.Ed.2d 406 (1985). An official intrusion into a particular area, nevertheless, cannot result in a Fourth Amendment violation unless the area is one in which there is a " 'constitutionally protected reasonable expectation of privacy.' " *New York v. Class*, 475 U.S. 106, 106 S.Ct. 960, 965[3, 4], 89 L.Ed.2d 81 (1986). The physical characteristics of an automobile, its mobility, and its pervasive regulation by official authorities engender the expectation of some intrusion into the privacy of the owner—and so justify a lesser degree of protection of that interest. *Carroll v. United States*, 267 U.S. 132, 153, 45 S.Ct. 280, 285, 69 L.Ed. 543 (1925); *South Dakota v. Opperman*, 428 U.S. 364, 367, 96 S.Ct. 3092, 3096, 49 L.Ed.2d 1000 (1976). The mobility of automobiles, moreover, "creates circumstances of such exigency that, as a practical necessity, rigorous enforcement of the warrant requirement is impossible." *United States v. Ross*, 456 U.S. 798, 806, 102 S.Ct. 2157, 2163, 72 L.Ed.2d 572 (1982).

■ On cognate principle, the probable cause which would justify a magistrate to issue a search warrant, justifies the search of a vehicle without a warrant by an officer who has legitimate cause to stop the vehicle. *Ross*, 456 U.S. at 817, 102 S.Ct. at 2168; *State v. Dowell*, 675 S.W.2d 875, 878 (Mo.App.1984). The existence of probable cause that a motor vehicle is transporting contraband is an exigency which justifies a warrant to issue to search the automobile or for an officer to search without a warrant. *Carroll*, 267 U.S. at 149, 45 S.Ct. at 283. In that sense, probable cause is "a belief, reasonably arising out of circumstances known to the seizing officer that an automobile or other vehicle contains that which by law is subject to seizure and destruction." *Id.* "Moreover, the probable-cause determination must be based on objective facts that could justify the issuance of a warrant by a magistrate and not merely on the subjective good faith of the police officer." *Ross*, 456 U.S. at 808, 102 S.Ct. at 2164; *Dowell*, 675 S.W.2d at 878.

■ Even in the absence of probable cause and warrant, it is not an undue intrusion for an officer to stop and frisk where he has reason to believe that the person he is dealing with is armed and dangerous. *Terry v. Ohio*, 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889 (1968). It is the necessity for "swift police action predicated upon the on-the-spot observations of the officer on the beat" which as a practical matter does not allow observance of the warrant procedure. *Id.* at 20, 88 S.Ct. at 1879. To justify the particular intrusion, however, the officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id.* at 21, 88 S.Ct. at 1879. In *Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977), the United States Supreme Court held that police may order persons out of an automobile during a stop for a traffic violation and may frisk the occupants for weapons if there is a reasonable belief that they are armed and dangerous. Then, in *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), the *Terry* principle was extend-

ed to the search of the interior of the vehicle "if the police officer possesses a reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant' the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons." *Id.* at 1049, 103 S.Ct. at 3480.

Accordingly, it was legitimate for trooper Deshler to search the interior of the Donohoe vehicle, already stopped for speeding, for weapons and to frisk the occupants—but only on *reasonable belief* that the occupants were dangerous, armed or had access to weapons. " 'The issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.' " *Long*, 463 U.S. at 1050, 103 S.Ct. at 3481; *Terry*, 392 U.S. at 21, 88 S.Ct. at 1879. It was legitimate also for trooper Deshler to search the interior of the Donohoe vehicle for drugs—but only on *probable cause* to believe, "reasonably arising out of circumstances known to the seizing officer that the [Donohoe] vehicle" contained contraband. *Carroll*, 267 U.S. at 149, 45 S.Ct. at 283. It is a standard which requires "that the facts available to the officer would 'warrant a man of reasonable caution in the belief' " the Donohoe car contained contraband. *Texas v. Brown*, 460 U.S. 730, 742, 103 S.Ct. 1535, 1543, 75 L.Ed.2d 502 (1983). Thus, in any case whether a Fourth Amendment violation has occurred " 'turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time', and not on the officer's actual state of mind at the time the challenged action was taken." *Maryland v. Macon*, 472 U.S. 463, 471, 105 S.Ct. 2778, 2783, 86 L.Ed.2d 370 (1985), *State v. Patterson*, 624 S.W.2d 11, 14 (Mo.1981).

Donohoe argues that there was neither ground for reasonable belief that any of the occupants of the vehicle were armed nor for probable cause that it contained drugs, and hence the search of the interior car without a warrant was an unconstitutional infringement and the failure of the court to suppress the evidence seized was error.

■ A motion to suppress under § 542.296 presents the issue of the admissibility in a criminal proceeding of evidence seized by police action, and so is collateral to the question of guilt or innocence of the defendant, which is tried independently. *State v. Yowell*, 513 S.W.2d 397, 402[1, 2] (Mo. banc 1974). It is for that reason that on appellate review—although further evidence on the issue is not foreclosed—the transcript of the proceedings on the motion is the essential determinant of the validity of the trial court disposition of the issue of admissibility. *Settle v. State*, 679 S.W.2d 310, 313 (Mo.App.1984), *cert denied*, 472 U.S. 1007, 105 S.Ct. 2701, 86 L.Ed.2d 717 (1985). On review we confine inquiry to whether that decision rests on substantial evidence. *State v. Johns*, 679 S.W.2d 253, 261[9, 10] (Mo. banc 1984), *cert. denied*, 470 U.S. 1034, 105 S.Ct. 1413, 84 L.Ed.2d 796 (1985). In that determination, we give regard to the opportunity of the trial court to assess the credibility of the witnesses [*State v. Boggs*, 634 S.W.2d 447, 453[4, 5] (Mo. banc 1982) ], and consider the facts and their inferences favorably to the order entered by the trial court. *State v. Blair*, 691 S.W.2d 259, 260[1] (Mo. banc 1985), *cert. granted*, 474 U.S. 1049, 106 S.Ct. 784, 88 L.Ed.2d 762 (1986), *cert. dismissed*, 480 U.S. 698, 107 S.Ct. 1596, 94 L.Ed.2d 678 (1987).

■ The order of the trial court here to admit the evidence taken in the search of the Donohoe car is at odds with the findings the court declares. In terms of the principles of review of a motion to suppress, the findings of the court are the basis for the order—and if they can be reasonably drawn from the evidence, sustain the decision as a matter of law. *Johns*, 679 S.W.2d at 261[9, 10]. The express declarations entered by the trial court—

from the evidence I heard this morning, it is the first case I ever heard where I think the trooper did everything wrong. Everything he said, everything he testified to indicated that he should have

done something that he didn't do or he should have done something differently than he did do

—are tantamount to findings that the trooper Deshler acted without reasonable belief that the occupants were dangerous and armed or without probable cause to believe that the Donohoe vehicle carried contraband. That is to say, the trooper lacked the "reasonable belief based on 'specific and articulable facts which .... reasonably warrant' the officer in believing the suspect is dangerous" and armed [*Long* at 1049], or "that the facts available to the officer would 'warrant a man of reasonable caution in the belief'" that the Donohoe car contained contraband. *Texas v. Brown,* 460 U.S. at 742, 103 S.Ct. at 1543. The decision of the trial court to admit the evidence seized notwithstanding the want of either reasonable belief by the officer that he was in danger or of probable cause to believe that the car contained contraband was not from want of confidence in the findings, but for a reason altogether extraneous to that function:

> Frankly, in my mind, and *this is an improper reason for doing it, but in my mind the defendant is guilty, which is not to be determined here,* but the cost of the appeal should lie with him. [emphasis added]

■ The issue of the guilt of the defendant—as the court acknowledged—is irrelevant to the determination of whether the evidence sought to be suppressed is admissible at the trial of the criminal charge. *Yowell,* 513 S.W.2d at 402[1, 2]. In a criminal case tried to the jury, moreover, the court may adjudicate the innocence of a defendant, but not the guilt. Rule 27.07. Accordingly, the order of the trial court to admit into evidence, on the ground stated, the substances and property seized in the search of the Donohoe car lacked propriety. What remains is the determination of the facts by the trial court. They manifestly find that the trooper acted without reasonable belief or probable cause, and hence impose the conclusion of law that the evidence seized was not admissible and must be suppressed. That is the only adjudication the substantial evidence supports.

The entire exploration by the trooper was prompted by the nervousness displayed by Donohoe. There was no substantial evidence of any other "articulable fact" on which the trooper based the belief that Donohoe and the others were dangerous and armed, or that the car they occupied contained contraband. Thus, unless the state of palpable uneasiness the trooper observed in Donohoe sufficed to ground a belief that the occupants were armed and dangerous or that the vehicle transported contraband, the intrusion to search was not justified.

The evidence taken most favorably to the order—albeit as we conclude, an order grounded in impropriety—shows that the encounter between the trooper and the occupants of the Donohoe vehicle was without threat or other "articulable" source of anxiety. The trooper described the conduct of the driver Donohoe as "polite and cooperative at all times", without taint of alcohol, and well behaved throughout. The officer was disturbed only by his "extreme nervousness"—"a lot of nervous talking was the main thing that drew my attention." It was the observed nervousness that "triggered something in me—triggered my suspicion", the trooper testified. "I felt there was something wrong for the nervousness; and for my own protection, I wanted to search the driver area for a weapon." The nervousness displayed by Donohoe, the officer repeatedly acknowledged, was what prompted him to consider the driver "armed or dangerous." The officer conceded, however, that in fact "[a]t that time I didn't know exactly what I was wanting to search for. I felt there was a possibility of contraband." Thus, by the best evidence the prosecution offered, the nervousness prompted not only a search for weapons in the car interior, but also for contraband.

■ Neither the subjective mind of the officer nor the good faith which the officer entertains for his judgments suffices to justify a warrantless search for weapons or for contraband. The legality of a

search, rather, "must be judged by the objective facts known to the seizing officers rather than by the justifications articulated by them." *United States v. Hawkins*, 811 F.2d 210, 213 (3rd Cir.1987), *Cert. denied*, —— U.S. ——, 108 S.Ct. 110, 98 L.Ed.2d 69 (1987). An investigatory search for weapons is valid where "the detaining officers has a particularized *and objective basis* for suspecting the particular person stopped of criminal activity." [emphasis added]. *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 694, 66 L.Ed.2d 621 (1981). A search of a vehicle without a warrant for contraband is valid where the circumstances known to the officer induces a reasonable belief that the vehicle contains matter which by law is subject to seizure and destruction. *Carroll*, 267 U.S. at 149, 45 S.Ct. at 283. Thus, good faith does not suffice to constitute reasonable belief that a person is armed or dangerous nor to constitute probable cause. That faith, rather, " 'must be grounded on facts within the knowledge of the [officer], which in the judgment of the court would make his faith reasonable.' " *Ross*, 456 U.S. at 808, 102 S.Ct. at 2164, 72 L.Ed.2d 572 (1982). That is to say: "Whether a Fourth Amendment violation has occurred 'turns on an objective assessment of the officer's actions in light of the facts confronting him at the time' ... and not on the officer's actual state of mind at the time the challenged action was taken." *Maryland v. Macon* 472 U.S. 463, 105 S.Ct. 2778, 86 L.Ed.2d 370 (1985).

On any objective assessment of the facts known to trooper Deshler at the time he acted, his testimony gainsays not only any articulable fact on which any reasonable belief could be based that the occupants were armed or that the car contained contraband, but also the subjective state of mind of concern for his own safety that—as his testimony asserts—prompted the search to begin with. There simply was no circumstance for the inference that any of the occupants was either armed or dangerous. Nor did the trooper treat them as such—whatever his subjective state of mind. None of them was ever frisked. Donohoe accompanied the officer from the patrol wagon to the car to commence the search, and the officer never concerned himself about the danger of Donohoe's presence. He did not frisk him or keep him in direct view. The two occupants remained inside the vehicle throughout the entire episode from stop for speeding to arrest for possession of narcotics. They were never requested to emerge for a pat down, nor were they frisked where they sat. Rather, they remained inside throughout the search [professedly for weapons]—one on the front seat and the other on the rear seat.

In fact, it was clear that the officer did not know what he was looking for. He found no weapon, and turned his search to drugs: "At that time I didn't know exactly what I was wanting to search for. I knew something was wrong. I felt like there was possibly a contraband ... Although, I admit, had I found drugs, that would have been contraband, which is what I was looking for." The officer testified he was trained regarding "detention and apprehension of people transporting drugs," but acknowledged that none of the occupants gave signs of marijuana or cocaine use. Nor, we observe, is there any suggestion of a tip or other prior information to the police that the Donohoe car was a carrier of contraband. The only articulable fact shown by the officer as an objective basis for his suspicion and search was Donohoe's extreme nervousness. That solitary circumstance simply does not suffice for the intrusion into a motor vehicle for a search, either for weapons or for drugs. *State v. Anderson*, 107 N.M. 165, 754 P.2d 542, 546[6] (Ct.App.1988).

■ Nor can the seizure be justified as of property found in plain view. That principle operates to validate a seizure only if the property is in open view and the access of the officer to the property has some prior justification under the Fourth Amendment. *Texas v. Brown*, 460 U.S. at 738, 103 S.Ct. at 1541. Here there was no prior justification to enter the car for a search nor were the drugs in plain view. They were detected only after the trooper entered the car, removed a stack of maga-

zines and discovered underneath a nylon bag, a "gun rug", sometimes used to hold a revolver—here used to keep a metal smoking pipe and drugs. Nor does the prosecution argument that the evidence was properly subject to seizure under the principle of inventory search avail. The inventory search, unlike the search in a criminal investigation, implicates routine caretaking administrative functions, and so is not subject to the warrant requirement of the Fourth Amendment. *South Dakota v. Opperman,* 428 U.S. 364, 370, 96 S.Ct. 3092, 3097, 49 L.Ed.2d 1000 (1976). It is the reasonableness of the *procedure* which determines the lawfulness of the seizure. *Colorado v. Bertine,* 479 U.S. 367, 374, 107 S.Ct. 738, 742, 93 L.Ed.2d 739 (1987). Here, as the prosecution concedes, there was no evidence that the highway patrol routinely impounds cars stopped for speeding, or of any other regular caretaking procedure designed to secure and protect vehicles and their contents within police custody pursuant to an arrest for such an offense. *Id.* The evidence seized by the trooper and then received in evidence was illegal and inadmissible in the trial of the offense based on seized property. The motion to suppress should have been sustained as a matter of law.

It is apparent from the record that the prosecution presented all the evidence available on the guilt of the defendant and that determination of guilt cannot be sustained without the evidence which should have been suppressed. *State v. Goodman,* 449 S.W.2d 656, 662[16] (Mo.1970).

Accordingly, the judgment is reversed and the defendant is ordered discharged.

All concur.